# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br> Plaintiff, <br> v. <br> AYMAN HAWARI, <br> Defendant. | Case No. 15-cr-00453-EJD-1 (VKD) <br><br> **ORDER CONTINUING DETENTION** |

On January 29, 2019, the Court held a hearing on defendant Ayman Hawari's motion for release from detention. Dkt. No. 76. Mr. Hawari was present at the hearing and represented by counsel. The United States opposes release. For the reasons stated on the record during the hearing and as set forth below, the Court finds that there are no conditions or combination of conditions of release that would reasonably assure the safety of other persons and the community. The Court therefore continues Mr. Hawari's detention.

## I. BACKGROUND

On September 15, 2015, a grand jury returned a felony indictment against Mr. Hawari on a single count of threatening a federal official in violation of 18 U.S.C. § 115. Dkt. No. 9.

Following his initial appearance in this case,[1] Mr. Hawari was released from custody pursuant to a $100,000 secured bond, residence with and custodial supervision by his father, home confinement, and several other conditions of release, including a requirement that Mr. Hawari receive psychiatric treatment. Dkt. No. 7. On November 6, 2015, the Court modified Mr. Hawari's conditions of release to permit him to reside in his own apartment in Santa Cruz,

---

[1] Mr. Hawari was originally charged by complaint. Dkt. No. 1.

California. Dkt. No. 14.

In early January 2016, the Pretrial Services Officer supervising Mr. Hawari reported to the Court her concerns about Mr. Hawari's behavior, including his use of marijuana, his failure to attend scheduled psychotherapy sessions on a consistent basis, and his suicidal ideation and threats of self-harm. Over the next several months, Pretrial Services reported similar alleged violations of release conditions and concerning behavior by Mr. Hawari. The Court admonished Mr. Hawari and adjusted the conditions of his release on several occasions in an effort to address these issues. *See* Dkt. Nos. 19, 29, 34.

On June 22, 2016, the United States filed a motion asking that Mr. Hawari be detained as a danger to himself and to the community. Dkt. No. 33. In that motion, the government argued as follows:

> The defendant has escalated his oft-repeated threats to harm himself to a level where he is now actually attempting to harm himself. The nature and circumstances of the offense in this case involve allegations that the defendant threatened to harm others and himself in an IRS office in Salinas. The defendant has recently entered a guilty plea to separate conduct in which he made a bomb threat. The defendant has admitted in this case at prior proceedings to grappling with serious mental health issues, and while the government appreciates that the defendant has done his best to address these issues through a program of outpatient counseling and treatment, these efforts have plainly not succeeded. Hawari's ongoing threats to harm himself present an obvious danger to himself, and could present a danger to others depending on the extent to which he actually acts on them, and the manner in which he does so.

*Id.* at 3. Following a bail review hearing, the Court again modified the conditions of Mr. Hawari's release and terminated the motion. Dkt. No. 34.

On March 15, 2017, the United States filed a superseding misdemeanor information, charging Mr. Hawari with one count of interfering through threats of force with the administration of the internal revenue laws, in violation of 26 U.S.C. § 7212(a). Dkt. No. 46. Mr. Hawari pled guilty to the superseding information on March 20, 2017 pursuant to a plea agreement that described the conduct on which the charged offense was based. Dkt. Nos. 48, 49. He was not detained at that time but was permitted to remain out of custody under supervision by Pretrial Services. *Id*.

2

Mr. Hawari continued to have difficulty complying with certain conditions of his release and the directions of Pretrial Services. *See* Dkt. Nos. 45, 50, 52 (describing conduct in March, April, and May 2017). The Court again admonished Mr. Hawari and further modified his conditions of release. Dkt. No. 54.

In June 2018, Pretrial Services again reported significant violations of the Court's release order, including new state court charges against Mr. Hawari in connection with a hash oil extraction lab Mr. Hawari allegedly built in his Santa Cruz apartment. Dkt. No. 62. The discovery of this lab so alarmed local authorities that they evacuated the apartment building to protect the safety of the residents. Shortly thereafter, Mr. Hawari was taken into state custody.

Mr. Hawari came before Magistrate Judge van Keulen on November 15, 2018 for an initial appearance on previously reported violations of his release conditions. Dkt. No. 70. However, the Court understands that during that proceeding, Mr. Hawari became violent and disruptive. The hearing was abruptly terminated as the U.S. Marshals attempted to restrain Mr. Hawari. Mr. Hawari was taken into federal custody at that time, where he has remained since.[2]

Mr. Hawari is due to be sentenced on February 21, 2019.

## II. LEGAL STANDARDS

Mr. Hawari pled guilty to a misdemeanor offense for which the maximum term of imprisonment is one year. In these circumstances, the law requires that Mr. Hawari be detained pending sentencing, unless the Court finds by clear and convincing evidence that he is not likely to flee or pose a danger to the safety of any other person or the community. 18 U.S.C. § 3143(a)(1). The Court assumes that such a finding was made at the time of Mr. Hawari's plea.

With respect to the present motion for release from detention, Mr. Hawari bears the burden of demonstrating that he is not likely to flee or pose a danger to any other person or to the community. Fed. R. Crim. P. 46(c); *see United States v. McCarns*, No. 2:08-CR-00116-KJM, 2014 WL 1247732, at *4–5 (E.D. Cal. March 25, 2014).

---

[2] The docket does not reflect an order of detention or other proceedings before Judge van Keulen, but the Court infers from the circumstances that Mr. Hawari did not contest his detention at the time, and has not contested it until his present motion.

3

**III. DISCUSSION**

Mr. Hawari argues that he is neither a flight risk nor a danger to the community.[3] He characterizes his current mental health status as "stable," but argues that his continued detention is harmful to his mental health. Mr. Hawari explains that, in connection with separate state court proceedings, he now has the opportunity to participate in a mandatory supervision program administered by Santa Cruz Probation, which will include not only close supervision but also a form of cognitive behavioral therapy called "dialectical behavioral therapy." He advises the Court that this particular therapy has been recommended for him, that it was not previously available to him, and that it is not currently available to him in detention. Mr. Hawari contends that his prior conduct while on release was a manifestation of his mental health problems, and that his conduct is likely to improve if he is able to receive appropriate therapy.

In addition, Mr. Hawari emphasizes that he pled guilty to a misdemeanor offense for which he will receive at most a one-year prison sentence, and perhaps a much lesser sentence, but that he has already been in custody for three months. Mr. Hawari says that despite his prior objections, he is willing to reside with his father and have his father serve as his custodian.

The United States strongly opposes Mr. Hawari's release pending sentencing on grounds that he poses a serious risk to the safety of others and to himself. The government cites Mr. Hawari's prior lack of compliance with the conditions of release set by the Court and his violent and threatening conduct. This conduct includes the conduct for which he was originally charged, his repeated threats of self-harm and actual self-harm, his threats of violence against others, and his recent violent and disruptive behavior in court. The government also points out that Mr. Hawari was charged in state court with criminal offenses alleged to have been committed during his prior period of release.

At the hearing, Pretrial Services advised the Court that it does not believe it can adequately supervise Mr. Hawari were he to be released from custody, given his mental health problems and his failure to comply with prior conditions of release.

---

[3] Mr. Hawari's motion was made orally at the hearing; he did not submit a memorandum in support.

4

The Court is sympathetic to Mr. Hawari's contention that continued detention is not conducive to his mental health, and the Court accepts his representation, for purposes of this motion, that the particular therapy that has been recommended for him is not available to him in detention.[4] Mr. Hawari's argument that he will be released soon (i.e., within a year) anyway, and that the sooner he is able to get the therapy he needs, the better, has a certain practical appeal. But even assuming the best thing for Mr. Hawari is release on the conditions that he submit to the custody of his father and participate in the prescribed therapy, that is not the standard the Court must apply in deciding his motion. Rather, the Court must decide whether he is likely to pose a danger to the safety of any other person or the community if released.

Mr. Hawari has not shown by clear and convincing evidence that his release on the conditions he proposes will ensure the safety of others and the community.[5] The Court has previously set conditions of release that are very similar to the ones Mr. Hawari proposes now, and he has demonstrated that he is unable or unwilling to comply with those conditions. His behavior has not just been non-compliant—it has also been threatening and violent. Most troubling to the Court, given Mr. Hawari's present motion, is his prior failure to attend his scheduled psychotherapy sessions on a consistent basis when he had the opportunity to do so, and his prior statements to Pretrial Services that if required to reside with his father he would kill himself. Even if the outpatient supervised therapy that Mr. Hawari proposes now is better than the therapy previously available to him, the Court is not persuaded that he will actually comply with its requirements and other conditions of release he now asks the Court to set. The Court also is not persuaded that Mr. Hawari will cease to engage in the kind of violent and threatening behavior that he has so recently demonstrated.

The Court concludes that it is unable to impose any conditions of release for Mr. Hawari that will reasonably assure the safety of other persons and the community. For this reason, the

---

[4] The parties did not provide the Court with any information about Mr. Hawari's mental health treatment in detention, and the Court was not able to obtain that information from the U.S. Marshals Service in advance of the hearing.

[5] The Court would reach this same conclusion even if it were the government's burden to show by clear and convincing evidence that Mr. Hawari *does* pose a danger to others or the community.

5

Court continues Mr. Hawari's detention pending sentencing.

**IV.  CONCLUSION**

Defendant Ayman Hawari is committed to the custody of the Attorney General or his designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. Mr. Hawari shall be afforded a reasonable opportunity for private consultation with defense counsel.  On order of a court of the United States or on the request of an attorney for the government, the person in charge of the corrections facility shall deliver Mr. Hawari to the United States Marshal for the purpose of an appearance in connection with a court proceeding.

**IT IS SO ORDERED.**

Dated: January 31, 2019

*Virginia K. DeMarchi*
VIRGINIA K. DEMARCHI
United States Magistrate Judge